772 So.2d 400 (2000)
Harold LeBLANC
v.
ALLSTATE INSURANCE COMPANY, Mildred W. Miller and State Farm Mutual Automobile Insurance Company.
No. 00-CA-1128.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 2000.
Rehearing Denied December 27, 2000.
Writ Denied February 9, 2001.
*402 Darryl J. Carimi, Metairie, Louisiana, Attorney for Plaintiff/Appellant, Harold LeBlanc.
Christopher E. Lawler, W. Richmond Beevers, Metairie, Louisiana, Attorneys for Defendants/Appellees, Allstate Insurance Company and Mildred Miller.
Gerald J. Talbot, Metairie, Louisiana, Attorney for Defendant/Appellee, State Farm Mutual Automobile Insurance Company.
Panel composed of EDWARD A. DUFRESNE, Jr., SUSAN M. CHEHARDY and JAMES C. GULOTTA, pro tempore.
CHEHARDY, Judge.
This is an appeal of a jury verdict in a case involving personal injuries following an automobile accident, where the jury found the defendant negligent in causing the accident, but failed to award any damages to the injured plaintiff. For the following reasons, we reverse and render.

FACTS
The accident occurred on March 31, 1994, when defendant, Mildred Miller, turned left at an intersection in front of plaintiff, Harold LeBlanc. Prior to the accident, Ms. Miller and Mr. LeBlanc were traveling in opposite directions on Jefferson Highway in Jefferson Parish. Ms. Miller attempted to execute a u-turn in the median of Jefferson Highway, failed to see Mr. LeBlanc's vehicle approaching, and drove directly into his path.
Several days after the accident, Mr. LeBlanc was examined and treated by Dr. Marc Kruse, a chiropractor he had previously seen for an arthritic condition in his neck. Mr. LeBlanc had four prior visits with Dr. Kruse during the two preceding years, the last visit being six months prior to the accident.
Because Dr. Kruse was only able to give Mr. LeBlanc temporary relief, Mr. LeBlanc was referred to Dr. Bernard Manale, an orthopedic surgeon. After examining Mr. LeBlanc and ordering several diagnostic tests, Dr. Manale suggested surgery to alleviate some of Mr. LeBlanc's symptoms.
Mr. LeBlanc was also examined and treated by Dr. Rand Voorhies, a neurosurgeon. While Dr. Voorhies also found Mr. LeBlanc suffered injuries from the accident, he did not believe that Mr. LeBlanc was a candidate for surgery.
Suit was timely filed against Ms. Miller, her insurer, Allstate Insurance Company and plaintiff's uninsured/underinsured motorist carrier, State Farm Mutual Automobile Insurance Company. A jury trial was held on January 25, 26, 27, and 28, 1999. After deliberations, the jury returned a *403 verdict, finding Ms. Miller negligent for the March 31, 1994 accident, but finding that her negligence did not cause any injuries to Mr. LeBlanc. This appeal ensued.

LAW
While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. La. Const. art. V, § 10(B). However, the exercise of this jurisdiction is tempered by the jurisprudential rule that a court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court announced a two-part test for the reversal of a factfinder's determination: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong.
The appellate court must do more than simply review the record for some evidence which supports or controverts the jury's finding. The appellate court must review the record in its entirety to determine whether the jury's finding was clearly wrong or manifestly erroneous. However, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
If the fact finder does not reach an issue because of an earlier finding which disposes of the case, the appellate court, in reversing the earlier finding, must make a de novo determination of undecided issues from the facts presented in the record. Austin v. Fibrebond Corp., 25,565 (La.App. 2 Cir.2/23/94) 638 So.2d 1110; Craven v. Universal Life Ins. Co., 95-1168 (La.App. 3 Cir.3/6/96); 670 So.2d 1358, writ denied, 96-1332 (La.9/27/96), 679 So.2d 1355. Generally, if the appellate court makes a finding that the trial court was manifestly erroneous or that there is a legal error and the record is, otherwise, complete, the appellate court should render judgment on the record. In such cases, the appellate court is not subject to the manifest error rule, but decides the case de novo. Rosell v. ESCO, supra; McLean v. Hunter, 495 So.2d 1298 (La. 1986).
It is a settled rule of law that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980). When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La. 1993).

ANALYSIS
In plaintiff's appeal, he asserts nine assignments of error. Because we find his first assignment meritorious, necessitating reversal, we pretermit discussion on the remaining assignments of error, with the exception of his final assignment of error, regarding lost wages and loss of earning capacity.
In plaintiffs first assignment of error, he asserts that the jury committed manifest error by failing to award damages to plaintiff for his injuries, after having found defendant at fault in causing the accident. Plaintiff asserts that the jury failed to apply the rule of law set out in Housley v. Cerise, 579 So.2d 973 (La. 1991), after being properly charged by the trial court prior to deliberations. We agree.
In Housley, the Louisiana Supreme Court announced a rule of legal presumption regarding causation in general delictual actions, as follows:

*404 A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Housley, 579 So.2d at 980.
In the matter before us, defendants claim that plaintiff failed to prove at trial that he was injured in the March 31, 1994 accident. Defendants point to plaintiff's pre-existing arthritis in his neck to argue that plaintiff's present symptoms are merely continuations of his prior symptoms. However, our review of the record in this matter shows that the testimony at trial was clear, and unrefuted, that plaintiff's present symptoms are new and distinct from his prior symptoms. Dr. Kruse, the only medical provider to testify who examined and treated plaintiff both before and after the accident, testified that
... prior to the accident, Mr. LeBlanc complained occasionally of primarily neck pain. After the accident, he complained consistently of arm pains. What I listed there was six symptoms that were not there prior to the accident. Consistent right trapezius pain, trapezius is this muscle right here (indicating), the top of your arm. Right upper arm pain, which is the pain he's feeling between the elbow and the shoulder; right forearm pain, is the pain he's feeling between his elbow and his wrist; the fourth and fifth digit numbness, which are these two digits and lately the past couple of months or so, he's beginning to experience intermittent right-sided head pain.
At trial, Dr. Kruse also testified that "it is more probable than not that the pain Mr. LeBlanc is feeling in his neck, his upper shoulder, his trapezius, his arm and the numbness in his fingers is secondary to that accident." Further, Drs. Voohries and Manale both testified that plaintiffs new and distinct symptoms of pain and numbness are more probably than not related to the accident. Additionally, none of the doctors doubted plaintiff's new pain symptoms since the accident or felt that he was exaggerating.
Upon review, we find that through his own testimony and the testimony of his treating physicians, plaintiff clearly proved at trial that there was a reasonable possibility of causal connection between the March 31, 1994 accident and the subsequent new injuries plaintiff sustained.
In order to defeat the presumption set out in Housley, the defendants must have shown some other particular incident could have caused the injury in question. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 761, citing Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2 Cir.1986). This the defendants failed to do.
After a thorough review of the entire record, we find that a reasonable factual basis does not exist for the jury to have determined that plaintiff was not injured in the March 31, 1994 accident. The testimony at trial was clear and consistent that plaintiff suffered injuries which caused an aggravation of his pre-existing arthritis, an aggravation which produced new and different pain symptoms and numbness, and which was more widespread and debilitating. Additionally, there was no indication from any of the evidence at trial that plaintiff would have suffered from these new pain symptoms and numbness if the accident had not occurred.
The evidence at trial showed that plaintiff was a different person after the accident. Before the accident, plaintiff enjoyed playing golf, fishing and bowling. The testimony from plaintiff and his friends/family members at trial was that he had to severely curtail these activities after the accident. Plaintiff testified that he became withdrawn and anti-social. As *405 a result of the accident, plaintiff sought medical treatment on a regular basis, and underwent a variety of sometimes uncomfortable diagnostic testing (including nerve conduction studies and a myelogram/CT scan). His treating physicians all agreed that he suffered injuries as a result of the automobile accident. Based on the record before us, we find that the jury was clearly wrong in finding that plaintiff did not suffer any injuries as a result of the March 31, 1994 accident.
Because the jury failed to reach the issue of damages, we must set an appropriate damages award based on the record. In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the award in an amount which is just compensation for the damages revealed by the record. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980); Whitaker v. Mullinax, 628 So.2d 222 (La.App. 2 Cir.1993).
There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Estate of Thomas v. State, DOTD, 604 So.2d 617 (La.App. 2 Cir.1992), writ denied, 608 So.2d 167 (La.1992). Factors to be considered in assessing quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173 (La.App. 4 Cir.1991), writ denied, 594 So.2d 1315 (La.1992); Miller v. Winn-Dixie Stores, Inc., 527 So.2d 989 (La.App. 3 Cir.1988), writ denied, 531 So.2d 763 (La.1988).
Upon review, we find that $35,000.00 is an appropriate general damages award to compensate plaintiff for his injuries resulting from the March 31, 1994 automobile accident. Based on the medical documentation admitted into evidence at trial, we further find that plaintiff incurred $6,492.20 in medical expenses as a result of the accident.
With regards to plaintiff's final assignment of error, that the jury erred in failing to award a loss of earnings or a loss of earnings capacity, the burden is on plaintiff to prove that because of his injuries, he has suffered a loss of income. Warner v. Great Atlantic & Pacific Tea Co., Inc., 583 So.2d 61 (La.App. 2 Cir. 1991). Plaintiff testified at trial that he could not perform his prior duties as a gauge technician after the accident. However, the testimony revealed that plaintiff continued to work for one year after the accident. There was also evidence that plaintiff was discharged from his job as a gauge technician for reasons other than the inability to perform his work as a result of the injuries he suffered in the accident.
Further, plaintiff did not testify at trial that he could no longer perform any work. Plaintiff's treating physicians testified that plaintiff could perform sedentary employment. Also, plaintiff testified that he is enrolled in school so that he can pursue a sedentary-type career. After reviewing the record, we find that plaintiff failed to carry his burden of proof with regards to his lost wages/loss of earnings capacity claims.
Accordingly, for the forgoing reasons, the trial court's October 29, 1999 judgment is hereby reversed. We hereby render judgment in favor of plaintiff/appellant, Harold LeBlanc, and award $35,000.00 in general damages and $6,492.20 in medical expenses, plus judicial interest from the date of judicial demand and all costs of these proceedings.
REVERSED AND RENDERED.